**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45456**

| | |
|---|---|
| In the Interest of: DOE CHILDREN, Children Under Eighteen (18) Years of Age. | ) ) ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) 2018 Unpublished Opinion No. 371 ) |
| Petitioner-Respondent, | ) Filed: February 26, 2018 ) ) Karel A. Lehrman, Clerk |
| v. | ) ) THIS IS AN UNPUBLISHED |
| JANE DOE (2017-33), | ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael Lojek, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Anthony R. Geddes, Ada County Public Defender; John R. Shackelford, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Brent King, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Jane Doe ("Mother") appeals the judgment terminating her parental rights to her children John Doe I, John Doe II, Jane Doe I, and Jane Doe II. Mother argues that the magistrate's findings that Mother subjected the children to chronic neglect and that it was in the children's best interests to terminate Mother's parental rights are not supported by clear and convincing evidence. For the following reasons, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2016, Mother was arrested, and her four children were placed in foster care. On January 18, 2017, the magistrate conducted a hearing on the State's motion for early permanency. Following the hearing, the court approved a permanent plan of termination and adoption and ordered the Idaho Department of Health and Welfare ("IDHW") to continue to make reasonable efforts to reunify the children with the parents pursuant to the Adoption and Safe Families Act. The State filed its termination petition on February 8, 2017. Mother gave birth to a fifth child while this case was pending. IDHW has not initiated proceedings to remove this fifth child from Mother's custody.

The termination trial began on July 18, 2017, and continued on August 16, August 17, and August 18, 2017. The State, Mother, Father, and guardian ad litem were all represented by counsel at trial.[1] The State's first witness was a detective from the Boise Police Department's Special Victims Unit. This detective had been tasked with retrieving Mother's children after Mother was arrested on June 8, 2016. The detective went to Mother's residence but the children were not present, and the detective could not gain access. However, the detective was able to see into the residence, noticing that it was very cluttered with numerous items stacked up against windows and exit doors. The detective also observed two individuals enter the residence and then smelled the odor of marijuana. The children were eventually handed off to the detective by a woman who had been asked to bring them to the detective by a different woman who was looking after them. When the children were delivered to the detective, they were dirty and all they had eaten was hot dogs. One child was sweaty, pale and vomiting, which the paramedics diagnosed as heat exhaustion, and another child was sunburned. The detective's description of the children's condition on that day is consistent with the testimony of one of the foster parents. This foster parent testified that when the two girls were delivered to them, one was missing shoes and underwear and was suffering from dehydration, which was causing diarrhea and vomiting, while the other was wearing shoes that were too small for her.

A child welfare social worker from IDHW then provided some background, explaining that the children had been removed from Mother's custody in 2014 and placed in foster care, but

---

[1] The Father represented at trial is only the father of the oldest boy. The other children have different fathers.

that Mother was able to regain custody. The social worker then testified as to what he was told by Mother after the 2016 arrest, with the important admission being that Mother was using meth and allowing others to use meth at her house. A police officer employed by the Boise Police Department then testified as to the events that occurred on May 20, 2016, when the officer responded to a call regarding two unattended children. Upon arriving, the officer noticed that the children were dirty and disheveled. The officer observed that the house was very cluttered and dirty, with broken furniture and garbage in the bedrooms, rendering them uninhabitable. Mother informed the officer that the children slept in the living room on a couple of couches, which were surrounded by piles of dirty clothes.

A licensed certified professional counselor, a trauma therapist who taught Protective Parenting Classes that Mother participated in, and a psychologist who evaluated Mother in January of 2015 also testified. The counselor explained that the psychological condition of each child worsened once the children had been around their mother. The counselor also recalled a specific incident where Mother revealed in front of one of her daughters that the daughter had genital warts from being sexually abused by another foster caregiver and that now people were not going to want to touch the daughter. The trauma therapist testified that Mother had expressed the need to take accountability for her actions, including using drugs, exposing her children to unsafe people, and being absent. The psychologist's report, which was admitted into evidence, included a summarized account of an exchange between Mother and the psychologist. In this exchange, Mother claimed that the children were not left unsupervised outside, despite her not being around to monitor them, because a neighbor and others in the neighborhood would supervise the children. In the same exchange, Mother also admitted that she let her oldest son, who was not yet nine years old, hang out with another child who convinced the son to try cigarettes.

Numerous other lay and professional witnesses also provided testimony at trial. After the trial concluded, the magistrate entered a judgment terminating Mother's parental rights to the children on October 17, 2017. Mother timely appealed.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d

3

341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

In our review, we are mindful that the finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties. *In re Doe*, 157 Idaho 765, 769, 339 P.3d 1169, 1173 (2014). In a parental-termination case, this is immensely important. *Id.* A cold record of the trial does not tell the whole story. An independent review by this Court could not take into account the trial court's superior view of the entire situation. *Id.*

4

**A.    Chronic Neglect**

Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. *In re Doe*, 156 Idaho 103, 110, 320 P.3d 1262, 1269 (2014). Idaho Code § 16-2005 specifies enumerated grounds for termination of parental rights. Termination is only appropriate if both (1) an enumerated ground for termination exists, and (2) termination is in the best interests of the child. *Id.*; *see* I.C. § 16-2005. The ground for termination in dispute in this appeal is chronic neglect.[2] Chronic neglect is defined as "neglect that is so extreme or repetitious as to indicate continuing the relationship would result in unacceptable risk to the health and welfare of the child." I.C. § 16-2005(2)(b)(i). The term "neglect" is defined, in part, as failure to provide "proper parental care and control, or subsistence, medical or other care or control necessary for [a child's] well-being." I.C. § 16-1602(31)(a).

**1.    Hearsay**

On appeal, Mother asserts that the magistrate abused its discretion in allowing the testimony under the catchall exception--Idaho Rule of Evidence 803(24)--as there was a lack of foundational evidence to support the magistrate's conclusion that the documents contained in the IDHW case file were "inherently reliable."

This Court reviews challenges to a trial court's evidentiary rulings under an abuse of discretion standard. *See Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50-51, 995 P.2d 816, 820-21 (2000). To determine whether a trial court has abused its discretion, this Court considers whether the trial court correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason. *Id.* Error is disregarded as harmless unless the ruling affects a substantial right of the party. *Id.*; I.R.E. 103(a); I.R.C.P. 61.

The State called a representative of the IDHW to testify based on the information contained in the IDHW's case file. Mother objected to the representative's testimony, arguing that it constituted hearsay. The magistrate then raised the issue of personal knowledge sua sponte, and the State conceded that the witness had no personal knowledge of the facts contained

---

[2]    Appellant only contests the finding of chronic neglect, not the finding of neglect, which means that an enumerated ground for termination exists regardless of whether we hold the magistrate's finding of chronic neglect is supported by substantial and competent evidence.

in the case file. Mother renewed her hearsay objection. The magistrate allowed the representative to testify based on the information contained in the case file, reasoning that there is an "inherent reliability to the nature of the information and/or that it's the type of information that this casework[er] would reasonably rely upon in doing her job." The magistrate stated that it was allowing the testimony under the catchall exception to the hearsay rule.

The original declarant that provided this information to the IDHW is unknown and some of the information is hearsay within hearsay. *See Herman v. Herman*, 136 Idaho 781, 785, 41 P.3d 209, 213 (2002) (holding that the district court did not abuse its discretion by determining that a letter purportedly written by a United States Department of Justice employee, but that was not presented along with any foundational evidence, lacked sufficient indicia of reliability).

Because there is clear and convincing evidence even without the representative's testimony, we exclude the representative's testimony for purposes of this opinion. Over the course of three days, the magistrate heard testimony from numerous witnesses with personal knowledge of the facts at issue; we rely on that testimony.

### 2.    Clear and convincing evidence

The magistrate determined that all four children had been subjected to chronic neglect by Mother. Mother challenges the accuracy of the magistrate's findings, which are found in the following paragraph:

> [Mother's] neglect of her children has persisted for years. The children have been removed and returned multiple times. Each child already has spent an unhealthy amount of time in foster care. For these reasons, [Mother's] neglect of her children is both extreme and repetitious and therefore continuing her relationship with her children would result in an unacceptable risk to the health and welfare of the children.

Mother contends that the following findings are unsupported by the record: (1) that Mother's neglect "has persisted for years," (2) that "the children have been removed and returned multiple times," and (3) that each child "has spent an unhealthy amount of time in foster care." Mother also argues that two one-year spells in foster care cannot be what the legislature meant when it chose the word "extreme" for purposes of defining chronic neglect.

We begin by examining whether the neglect "has persisted for years." The oldest boy was first placed in foster care in 2007, albeit only for a few months. However, all four children have been in and out of foster care since 2014, with some of the children being in foster care for over two years. The guardian ad litem's description of the situation was that "the children have

6

in the last few years been essentially in foster care more than with [Mother]." The guardian ad litem and magistrate's characterization of the persistent neglect is supported by the record.

Mother also challenges the magistrate's statement that "the children have been removed and returned multiple times." Mother is correct that this statement is only partially true as applied to all of the children because, according to the majority of the testimony presented at trial, three of the children have only been *returned* once. Nevertheless, the number of times the children were placed into foster care is what is important for a finding of chronic neglect. Here, we conclude that the magistrate's finding of chronic neglect is supported by substantial and competent evidence.

Mother's third contention hinges on the fact that "unhealthy" is not a technical term. To contradict the magistrate's finding that the children have spent an unhealthy amount of time in foster care, Mother's brief states that the IDHW social worker who testified at trial "characterized the children's time in foster [care] as 'wonderful.'" This is a mischaracterization of the social worker's testimony; the actual testimony was that the children were doing wonderfully in their *current* foster placement. The exact length of time each child spent in foster care was included in the magistrate's decision via the magistrate incorporating the State's allegations into the decision verbatim:

> Count V
> Pursuant to Idaho Code § 16-2005(2)(b)(i), the mother has subjected the child . . . to chronic neglect. The child is a victim of neglect that is so extreme or repetitious as to indicate continuing the relationship would result in unacceptable risk to the health and welfare of the child, to wit: The mother has allowed the child to come in to foster care on three separate occasions, and has demonstrated an inability to consistently meet the child's needs, which as of July 2017 will have resulted in him spending approximately 850 days of his life or 28 months in foster care, and said conduct demonstrates repetitious and/or extreme neglect.
> Count VI
> Pursuant to Idaho Code § 16-2005(2)(b)(i), the mother has subjected the child . . . to chronic neglect. The child is a victim of neglect that is so extreme or repetitious as to indicate continuing the relationship would result in unacceptable risk to the health and welfare of the child, to wit: The mother has allowed the child to come in to foster care on two separate occasions, and has demonstrated an inability to consistently meet the child's needs, which as of July 2017 will have resulted in him spending approximately 450 days of his life or 15 months in foster care, and said conduct demonstrates repetitious and/or extreme neglect.

7

Count VII

Pursuant to Idaho Code § 16-2005(2)(b)(i), the mother has subjected the children . . . to chronic neglect. The children are victims of neglect that is so extreme or repetitious as to indicate continuing the relationship would result in unacceptable risk to the health and welfare of the children, to wit: The mother has allowed the children to come in to foster care on two separate occasions, and has demonstrated an inability to consistently meet the children's needs, which as of July 2017 will have resulted in them spending approximately 750 days of their life or 25 months in foster care, and said conduct demonstrates repetitious and/or extreme neglect.

Based on the evidence contained in the record, we cannot say the magistrate was incorrect in finding that the children have spent an unhealthy amount of time in foster care for purposes of reunification, as the children have been separated from Mother for so long and are becoming accustomed to a different environment.

Mother also argues that two one-year spells in foster care is not "extreme" for purposes of a finding of chronic neglect under I.C. § 16-2005(2)(b)(i). Though the magistrate found that the neglect was both extreme and repetitious, the State only alleged--and only needed to prove--that the neglect was extreme *or* repetitious. The State proved that each child had been placed into foster care, due to neglect, multiple times. Accordingly, the magistrate's finding of repetitious neglect is sufficient to affirm the magistrate's determination that the children were subjected to chronic neglect.

## B. Best Interests of the Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Doe*, 156 Idaho at 111, 320 P.3d at 1270. A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012). A finding of chronic

neglect allows the trial court to rebuttably presume that termination is in the best interests of the child. I.C. § 16-2005(2)(b)(i).

Mother interprets I.C. § 16-2005 as requiring courts to include a separate analysis paragraph for each child, as it uses the phrase "best interests of the child." Here, the magistrate referenced the best interests of the "children" and concluded that Mother would be overwhelmed if tasked with caring for all of her children. Mother contends that this analysis did not satisfy the requirements of I.C. § 16-2005 or due process. Mother further argues that the magistrate should have given more weight to her recent progress.

### 1. Focusing on "the children" rather than each "child"

Mother does not dispute that there is evidence in the record showing that she is currently unable to care for all five of her children at the same time; rather, she contends that if she is able to safely care for her sick newborn, it stands to reason that Mother can also take care of at least one of her other children. However, there is evidence to support the magistrate's finding that Mother is currently unable to care for the children.

The Ada County Drug Court counselor testified that she would be concerned with Mother's ability to complete all of the work required by the program if she had four more children living with her. The counselor also explained that Mother would need a babysitter because drug court meetings only allow mothers to bring along infants, not older children. Because none of the four children involved in this case are infants, the magistrate would not need to mention each of them individually when considering this fact.

Moreover, Mother did not have steady employment or stable housing that would accommodate all of the children. Employment is difficult, in part, because Mother's infant child has medical conditions that require constant care. Mother currently has a care coordinator through a local hospital that arranges respite care for the newborn, which would allow Mother to work twenty to thirty hours per week. Mother's friends watch the newborn part of the time, as well. The magistrate noted that if Mother were to have to vacate her 500 square foot, one-bedroom apartment, she would likely not be able to return to the City Light Home for Women if she had custody of her other children. The family would be too large for that facility, especially considering that the newborn's heart condition would exclude the family from living in the "general population" area.

9

Mother's neglect also affected all four of the children equally in the past. A potential relapse would equally affect all of the children in the future. Another factor that applies equally to all of the children is Mother's mental health. Mother has been diagnosed with multiple mental health issues that compromise her ability to parent, yet she has not consistently addressed these issues. The magistrate's fifty-five page decision is replete with factual findings supporting its conclusion that it was in the best interests of all of the children to terminate Mother's parental rights.

## 2. Mother's progress

In her brief, Mother argues that the magistrate did not give due weight to her recent progress. Mother explains that she had overcome the hurdle of substance abuse, developed a support network, and was about to start a job at the time of trial. In its decision, the magistrate noted that Mother had made some recent progress, but then stated: "[E]xperience indicates that she has not and likely will not make the permanent, long-lasting changes necessary to properly care for her children." The record supports this conclusion and precedent supports the magistrate's decision to discount Mother's recent progress.

The magistrate noted in its decision that Mother was attending all of her drug court meetings, but that it would be difficult for Mother to continue on this path if she were to have to take care of children in addition to her infant. As for Mother overcoming her drug addiction, the record shows that Mother has relapsed in the past and was not forthcoming about that fact. Despite claiming that she can be the parent her children need, she failed to be involved in her oldest boy's counseling and has repeatedly broken promises to the children. The magistrate also described Mother as appearing to be "naïve, immature, and lacking insight," which in turn "adversely affected her ability to persuade the Court that her promises and other representations are wholly accurate and/or reliable." We do not question credibility determinations made by the factfinder.

In *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 761, 390 P.3d 1281, 1288 (2017), the Idaho Supreme Court found no error in the magistrate's conclusion that Mother's recent and modest improvements were insufficient to overcome her history of demonstrated unfitness. The Court did not require the magistrate to put more weight on Mother's future promises than her past conduct. *Id.* Like the magistrate in the present case, the magistrate in *Doe (2016-32)* noted that there was no guarantee that Mother would not relapse

and characterized the recent progress as "too little, too late." *Id.* The facts in the present case are also similar to other Idaho cases where termination of parental rights has been upheld. *See State, Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 665, 182 P.3d 1196, 1199 (2008) (affirming magistrate's determination that termination of parental rights was in the best interests of the children, underscoring evidence of repeated drug use relapses, unemployment, and period of separation); *Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999) (affirming trial court's termination of Roe's parental rights because Roe's plans for the future were uncertain); *see also Idaho Dep't of Health & Welfare v. Doe*, 155 Idaho 145, 149-52, 158, 306 P.3d 230, 234-37, 243 (Ct. App. 2013) (affirming order terminating parental rights, despite recent progress, where Mother had a history of drug abuse, a suspended driver's license, massive debt, and a history of child neglect, such as allowing her daughter to go to school in a snowstorm with no socks). Accordingly, we hold that the magistrate did not err by deciding to terminate Mother's parental rights despite Mother's recent progress.

## III.

## CONCLUSION

We hold the magistrate's decision to terminate Mother's parental rights, on the basis of chronic neglect and because it was in the children's best interests, was supported by substantial and competent evidence. Additionally, we hold that the magistrate did not err by not explicitly considering the best interests of each child individually and by discounting Mother's recent progress. Therefore, we affirm the judgment terminating parental rights.

Judge HUSKEY **CONCURS.**

Judge LORELLO **CONCURS IN THE RESULT.**

11